22-14-11, Pattanayak v. Mastercard Inc. Mr. President, appellant, Sandman Pattanayak, and I thank you for the opportunity to briefly address you this morning. This appeal is centered on the standard, I believe the standard of proof required to defeat a 12B6 motion on the pleadings. Or in fact, in this case, does the plaintiff's second amended complaint state a cause of, enough facts to state a cause of action? While no one wants to stand up here and criticize the sitting judge at the district court, it might be- That's what we do for a living.  That's what we do for a living. Yes, I know, and that's what we're up here to do, I understand that. The district court judge, while addressing the issues, both in oral argument and in his two written decisions, I contend, required the plaintiff to satisfy a burden he is not required to satisfy at this stage of the litigation, especially in the 12B6 motion. And I understand we've come a long way to get here, through the state court, federal court, similar to the other case that was just before us. But if you read the oral argument of Judge Daniels and myself, and the original motion, you cannot wonder, was this a motion for summary judgment, or not a motion under 12B6? Not only did the judge require a heightened standard, in my opinion, he was factually wrong on many occasions, and failed to give even reasonable inferences to Mr. Pataniac. For example, he would say, nowhere in the FAC, the original amended complaint, did we contend that plaintiff's complaint complained about discrimination. And that was simply not true. And when I told the judge about what paragraphs of the complaint he could find that information, in fact, read them into the record, he disregarded it. Well, why don't you talk about those paragraphs, rather than recreating your back and forth with the district judge? In terms of finding them- In which paragraphs do you contend, well, why do you think dismissal was improper? Because I think that the plaintiff has sustained, provided enough factual information in the complaint. And really, I guess the first amended complaint is probably moot. Really, we're dealing with the second amended complaint, because we did take the opportunity that the court granted us to draft a complaint, which was much more specific in terms of its facts, much more specific in terms of its allegations. And comprised of almost 250 paragraphs in the complaint. And again, I think what I pointed out to the judge in the oral argument, I cite to certain pages, for example. Well, why don't we start with Reese discrimination? Maybe you can point to the paragraphs proposed second amended complaint. Do you want it in the second amended complaint? Yeah, that connect your allegations. Because part of the trouble I had was it seemed like somewhat of a moving target. Sometimes it was race, sometimes it was disability. And it wasn't clear to me where there were allegations that were specifically linking one protected characteristic with the other. I do agree with you, your honor. And I think that point was made in the oral argument and the prior motions. That there are kind of congruent facts that could satisfy, in my opinion, certain claims, not only just under race and national origin, but also under the disability. And of course, the hostile work environment, which we had a long discussion of. But when you talk about race in this case- Age, you also- Age? No, we didn't plead age. No, we didn't plead age in this case, your honor. So, in the base of that- His wife. I mean, I guess there's a lot of things going on. There were a lot of things. Yes, your honor, there were a lot of things going on, absolutely. And I think what I was trying to show the judge and why this new amended complaint, I think, is very well drafted, much better drafted, I would say. Well, give us the couple paragraphs that you think get you over the line. Okay. It's hard to find one or two, because what we tried to do, we talked about- Give us your best. Well, when you talk about the fact that there's several comparators that deal with non-Indian descent who were treated differently than he was when he was out on disability, when he asked for extended leave, when he asked for- Where do you identify points of similarity that make them, as you say, comparators? I think it's, and I can't point to one paragraph, it's right throughout our complaint. Give us any one of them. We don't rely on anything if it's not in the complaint. So you have to point us at the points in the complaint. I understand. Okay, so for example, I believe if you look at somewhereハin the paragraph,   77 through 90 where he talks aboutハwe talk about how he was being treated in terms of differences between other people on his level and what support staff they got. We talk about his manager calling himハhis direct line manager calling him a red-headed stepchild. We talk about in the complaintハand I apologize, Your Honor, I can't put my finger to the particular accounts right now. But we do go into it in great detail about what was said. And despite all that, paragraph 128, we talk about this is Schneider, his direct line manager. That begins at 126 down through 130. And, you know, again, I understand that there's no direct evidence of someone saying we didn't give you support staff. We didn't extend your leave. We didn't do this. We didn't do that because you're Indian or of Indian descent. We never have that in our cases. We never get that. And we'll have to try to prove this circumstantially. And I believe when you pile all these allegations on top of one another, you do find enough support for the factual allegations in our complaint. Okay. Thank you, Counsel. You've reserved a minute. Thank you, Your Honor. Thank you, Your Honors. Good morning. With me today is Laura Victorelli, who took the labor and gore on writing the briefs. May it please the Court. I want to take actually a step back because, first of all, there's no question, even though I understand it's this Court's business to critique the lower court, there's no question that the trial court got the standard correct in deciding the motion. I know that Plaintiff's Counsel puts a lot of emphasis on the oral argument and questions that were posed to him by Judge Daniels in a very lively oral argument. But at the end of the day, in the decision, there's no question the Southern District applied the correct standard on a 12B6 motion. Does the plaintiff squeak by on an allegation that he was fired in retaliation for the assistance that he gave his wife in her resistance of a, in her assertion of discrimination? I have to tell you, Your Honor, that is probably his weakest argument. Just in terms of the temporal proximity between the two allegations. Mrs. Botaniac was terminated several years earlier, and Plaintiff's Counsel, even at the oral argument, made it clear that he never in any way suggested that he was lodging a complaint or helping his wife advance a complaint. A complaint that there's no even information in any of the three complaints that have been filed in this case. This case, like the case right before us, also has a tortured procedural history. None of the three complaints even suggest what Mrs. Botaniac was complaining about, other than broadly discrimination. But the temporal proximity is entirely gone between Mrs. Botaniac's claims and Mr. Botaniac's termination several years later. So as I was saying, I want to take a little bit of a step back, because before we even get to the correct standard in dismissing a case, the plausibility standard, much of the complaint is time barred. Mr. Botaniac filed his EEOC charge in February 2019. As this court knows- Can I ask you about that? The complaint, his second, proposed second amended complaint says that it was November 2018. And I don't know why we can't nail down the date of the filing, but it seems like we weren't able to do that. Your Honor, that's a good point. That's just not accurate. We have a copy of the EEOC charge. Unfortunately, it wasn't part of the record. I have copies of it with me for the court today and for plaintiff's counsel. It's not in the record, though. It's not. But in the oral argument, Mr. Genitempo said that the dates are correct. That the charge was, all the dates in the pleadings are correct. And that the representation that, excuse me, was filed in February 2019 is correct. Because we're at 12B6, aren't we stuck with the allegations of the complaint? And I suppose you could win on summary judgment on the base of time bar if it turns out that, for example, there had never been an EEOC complaint, but the complaint had alleged such a thing, right? But then you would have an evidentiary back and forth about whether it had been filed and when it had been filed. That's what summary judgment's for. I agree, Your Honor. But there's no dispute here as to when the actual EEOC charge was filed. Plaintiff's counsel has the EEOC charge. It has the date right on it. The issue is- There is, though. We don't have, it's not in the record, your February date. And his complaint says it's in November. So it seems like we're stuck with that. Well, the issue that plaintiff's counsel is raising is that he reached out to the EEOC in November 2018. But because of the government shutdown in December, he was unable to file the charge. The problem is the proposed second amended complaint doesn't say I reached out. It says filed a complaint. Now, understand, maybe if this went to fact finding or discovery and whatnot, you could prove that that's utterly false. But you're asking us to look outside the record on a 12B6 to determine that some of the factual allegations are false? We don't do that, right? I don't disagree, Your Honor. You're right. I'm asking you to accept that the charge has a date on it. And that plaintiff's counsel doesn't dispute that that's the actual charge that was filed. Plaintiff's counsel, during oral argument to Judge Daniels, had said that he had reached out to the EEOC in November 2018, but was unable to file the charge because of the government shutdown. I mean, if counsel stands up in rebuttal and says I abandoned that complaint, maybe that's one thing. But other than that, it's in there, right? Or maybe you can address why those months don't matter. But in any event, Your Honors, it doesn't make a significant difference in the time-barred nature of most of the allegations. Most of the allegations that Mr. Patanagak is complaining about occurred in 2016 and 2017. Whether the charge was filed in November 2018 or three months later in February 2019, the overwhelming majority are still time-barred. The only allegation- Correct. And that's where the question of does plaintiff meet the standard of plausibility? There's absolutely nothing in any of the complaints that he's filed. And I don't disagree that plaintiff did file a much longer complaint the third time around. I mean, the complaint went from, I think, 30 paragraphs to 150 paragraphs to the last complaint was nearly 300 paragraphs. But the deficiency in each of the complaints, there's nothing linking it to a protected classification. Thank you, Counsel. Thank you, Your Honors. Just very briefly, Your Honor, thank you. We didn't address this, but the disability issue you have I would like to also address because when you talk about plausibility and you talk about what's in the complaint, I'm sorry, Your Honor, but I did find count one has all the information, the facts that we allege, in addition to the preamble facts regarding race and national origin. But they told him, we're not giving you support because of your health issues. That's in the complaint. Now, he came off of a disability period of time where he had a significant depression. Dysthemia was the condition that he had. He asked for more time. They refused to give it to him. Then they told him, we're not giving you the same staff that we've given everybody else at your level because of your health condition. That in and of itself should make a prima facie case and enough facts to support a claim for the disability. I disagree with Counsel. This is a continuing violation case. It doesn't have to be a sexual harassment case to be a continuing violation case. It can happen in any factual scenario. And I think in this case, it clearly did. Thank you, Your Honor. Thank you, Counsel. Thank you both. I neglected to introduce my associate who also wrote the briefs. My apologies. Michael Corbett, Your Honor. Thank you. Thank you all. We'll take the case under advisement. And that concludes our arguments for today. The remaining two cases are on submission. So I'll ask the Court Deputy to adjourn. Court is adjourned.